UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODNEY WHITE,

        Plaintiff,

v.                                                      Case No. 19-C-946

FINCANTIERI BAY SHIPBUILDING, et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Rodney White filed this action against Defendants Fincantieri Bay Shipbuilding, Fincantieri Marine Group LLC, Keystone Shipping Co., Chas Kurz & Co., Inc., and Wawa, Inc., seeking damages for injuries he sustained while working as a technician aboard a towing motor vessel as it underwent sea trials on Lake Michigan. The complaint asserts claims under the Longshore and Harbor Workers' Compensation Act (the Longshore Act), the Jones Act, and general maritime tort law, which fall within the court's admiralty jurisdiction. 28 U.S.C. § 1333. The complaint also asserts claims for common law negligence, respondeat superior, and punitive damages under Wisconsin law, over which the court has supplemental jurisdiction. 28 U.S.C. § 1367. Presently before the court is a motion filed by Defendants Fincantieri Bay Shipbuilding and Fincantieri Marine Group LLC to dismiss the Jones Act claim and the state law claims for negligence and punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss, Dkt. No. 9, will be granted but only in part.

**LEGAL STANDARD**

In considering a motion to dismiss, the court construes all allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011). To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that he is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

**ALLEGATIONS CONTAINED IN THE COMPLAINT**

Plaintiff suffered traumatic brain injury and a herniated cervical disc while he was working aboard a registered towing motor vessel referred to as the M/V Millville (with official number

1281260) as it underwent sea trials. Plaintiff was working on the Millville in his capacity as a technician employed by Engine Motor, Inc. (EMI), a company that manufactures, installs, and services navigation and steering systems for motor vessels. The Millville was constructed by Defendant Fincantieri Bay Shipbuilding, Inc. (FBS) for Defendant Wawa, Inc. (Wawa); Defendant Keystone Shipping, Co. (Keystone) was to operate the Millville.

On or about November 10, 2017, Plaintiff boarded the Millville (with the knowledge and permission of Defendants, including the ship's crew and master) as it left FBS's shipyard in Sturgeon Bay, Wisconsin, to conduct sea trials. Plaintiff was on the Millville to observe the operation of the EMI equipment that had been installed. As a technician, Plaintiff was tasked with installing and testing the steering equipment on the Millville and ensuring that it functioned properly.

Plaintiff was in the galley of the Millville when the sea trials began and the vessel started "hardover test maneuvers." Plaintiff alleges that he had no prior warning of the test maneuvers, which caused him and others to be physically thrown about. During these maneuvers, Plaintiff was "violently thrown," first against the starboard wall of the Millville and then against its port side. Plaintiff alleges that these maneuvers caused the serious injuries described above.

Plaintiff alleges six causes of action in his complaint: (1) a claim for damages under § 905(b) of the Longshore Act; (2) an "unseaworthiness" claim under the Jones Act, 46 U.S.C. § 30104; (3) a negligence claim under general maritime tort law; (4) a claim for vicarious liability for error and omissions of Defendants' agents and employees (including the ship's crew and master) under the doctrine of respondeat superior; (5) a negligence claim under Wisconsin common law; and (6) a claim for punitive damages under Wis Stat. § 895.043.

3

**ANALYSIS**

Defendant Fincantieri Marine Group, LLC (FMG) and Defendant FBS (collectively referred to herein as Fincantieri) filed a motion to dismiss three of the causes of action in Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). Fincantieri has moved to dismiss the claims of unseaworthiness (Count 2), common law negligence (Count 5), and punitive damages (Count 6).

**A. Unseaworthiness (Count 2)**

Count 2 of Plaintiff's complaint alleges that Defendants are liable for the "unseaworthiness" of the Millville that resulted in Plaintiff's injuries. Admiralty law establishes that shipowners must provide a seaworthy vessel to their crew (comprised of seamen), but this duty does not extend to longshoremen who are covered by the Longshore Act. *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 208 n.6 (1996); *Edward E. Gillen Co. v. Grenier*, No. 09-CV-114-JPS, 2011 WL 3924818, at *1 (E.D. Wis. Sept. 7, 2011); THE LAW OF SEAMEN § 27:2 (5th ed.) ("The person to whom the duty is owed to furnish a seaworthy ship in personal injury matters, is the seaman."). While the Supreme Court attempted to extend the warranty of a seaworthy ship to longshoremen in *Seas Shipping Co. v. Sieracki*, 328 U.S. 85 (1946), Congress subsequently overruled the extension of this duty in its amendments to the Longshore Act in 1972. *Id*. The amendment to § 905(b) of the Longshore Act—providing grounds for a longshoreman's general claim of negligence against a vessel owner—states that the "liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred." 33 U.S.C. § 905(b). In other words, a claim for unseaworthiness under general maritime law is available to a seaman, but not to a longshoreman covered under the Longshore Act. *See id.*; *Yamaha*, 516 U.S. at 208 n.6; *Dir., Office of Workers' Comp. Programs, U.S. Dep't of*

*Labor v. Perini N. River Assocs.*, 459 U.S. 297, 321 (1983); *Clemons v. Mitsui O.S.K. Lines, Ltd.*, 596 F.2d 746, 749 (7th Cir. 1979); *Edward E. Gillen Co.*, 2011 WL 3924818, at *1. Instead, Congress amended the Longshore Act, which provided longshoremen with a separate cause of action for negligence and "made clear that it was abolishing the *Sieracki* unseaworthiness claim for plaintiffs covered" by the Longshore Act. *Edward E. Gillen Co.*, 2011 WL 3924818, at *1; 33 U.S.C. § 905(b).

Relying on language discussed by the Supreme Court in *McDermott International, Inc. v. Wilander*, 498 U.S. 337 (1991), Plaintiff insists that his status as a seaman is a jury question. But while *Wilander* noted that in many cases this may be a jury question, it did not hold that whether a person qualifies as a seaman should be reserved for the jury in all cases. *Id.* at 356. The Court explained that "where the facts and the law will reasonably support only one conclusion" summary judgment or a directed verdict is required. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Similarly, at the pleading stage, a complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it does not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. To hold otherwise would encourage the waste of time and resources, both those of the parties and the court, in conducting research and addressing discovery matters concerning a legal theory that will ultimately have no bearing on the disposition of the case.

The question before the court, then, is whether the complaint plausibly alleges that Plaintiff was a seaman at the time of the accident. "Seaman" is not defined in the Jones Act—which, pursuant to 46 U.S.C. § 30104, provides relief to a "seaman injured in the course of employment"—so courts have developed their own jurisprudence to answer this question. *See*

5

*Chandris, Inc. v. Latsis*, 515 U.S. 347, 355 (1995). To qualify as a seaman under the Jones Act, "an employee's duties must 'contribut[e] to the function of the vessel or to the accomplishment of its mission'" and the employee "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature." *Chandris*, 515 U.S. at 368; *see also Harbor Tug & Barge Co. v. Papai*, 520 U.S. 548, 554 (1997). The "ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time." *Chandris*, 515 U.S. at 347; *see also Wilander*, 498 U.S. at 355 ("The key to seaman status is employment-related connection to a vessel in navigation.").

In contrast, the Longshore Act covers those who are "engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-worker including a ship repairman, shipbuilder, and ship-breaker;" but it does not include "a master or member of a crew of any vessel" if they are covered by State workers' compensation law. 33 U.S.C. § 902(4). The Supreme Court has held that the Longshore Act and the Jones Act "are mutually exclusive compensation regimes: 'master or member of a crew' is a refinement of the term 'seaman' in the Jones Act; it excludes from [the Longshore Act] coverage those properly covered under the Jones Act." *Chandris*, 515 U.S. at 355–56 (internal quotations omitted). It follows that if Plaintiff, as a matter of law, is a longshoreman entitled to relief under the Longshore Act, he cannot also be a seaman entitled to relief under the Jones Act.

Turning to the complaint, there is no allegation that Plaintiff is a "seaman," a prerequisite for establishing a breach of the warranty of seaworthiness under general maritime law. Instead, as part of his cause of action alleging unseaworthiness, Plaintiff states that he is employed by EMI "to

6

provide shipbuilding and/or repairing services" for the Millville. Dkt. No. 1 at 7. Fincantieri argues that this description demonstrates that Plaintiff is in fact a longshoreman, and not a seaman. Dkt. No. 10 at 7. The court agrees. The complaint alleges that Plaintiff's occupations are exactly those that Congress intended to cover under the Longshore Act—"ship repairman" and "shipbuilder." 33 U.S.C. § 902(4). In fact, the complaint does not even contain the term "seaman." As the Supreme Court has noted: "[l]and-based maritime workers do not become seamen because they happen to be working on board a vessel when they are injured." *Chandris*, 515 U.S. at 361. Finally, Plaintiff alleges that he is an employee of EMI—not a member of the vessel's crew—further undermining his claim that he is a seaman of the Millville entitled to the warranty of seaworthiness.

The parties also dispute whether Plaintiff is precluded from alleging the warranty of seaworthiness as the Millville was undergoing sea trials at the time of the accident (and, therefore, had yet to be deemed seaworthy). Dkt. No. 16 at 4. However, the court need not address this cause of action further as Plaintiff has failed to state any facts on which the court can reasonably infer he is a seaman and not a longshoreman as a matter of law. Because the warranty of seaworthiness extends only to seamen, Plaintiff has not plausibly alleged facts on which relief under this cause of action may be granted. Accordingly, Count 2 of Plaintiff's complaint is dismissed.

**B. Common Law Negligence and Punitive Damages Claims Under Wisconsin Law (Counts 5 and 6)**

Fincantieri asserts that Plaintiff's claim for common law negligence and punitive damages should be dismissed because they are preempted by federal law. It is true that courts have allowed plaintiffs to plead tort law claims along with Longshore Act claims. *See Holder v. Fraser Shipyards, Inc*., 288 F. Supp. 3d 911, 934 (W.D. Wis. 2018) ("'If a maritime worker recovers

7

against a vessel under § 905(b), then he may not also sue the vessel in tort,' but if he cannot recover from the vessel's owner for failure to state a claim under § 905(b), that provision 'does not preempt [his] state-law claim against [the vessel's owner] as a third-party tortfeasor.'" (quoting *McLaurin v. Noble Drilling (US) Inc.*, 529 F.3d 285, 293 (5th Cir. 2008)) (alterations in original)). But that is only where there is some doubt over whether the plaintiff has a claim or claims under the Longshore Act. Here, unlike *Holder*, there appears to be no dispute that Plaintiff has valid claims under the Longshore Act. Under these circumstances, there would seem to be no reason to continue Plaintiff's Wisconsin law claim in the case. That claim will therefore be dismissed.

The Court's decision in *Yamaha* is not to the contrary. There the Court held that notwithstanding the applicability of federal maritime law, state remedies for wrongful death arising from accidents to nonseamen in territorial waters were also applicable. 516 U.S. at 209–11. In so ruling, the Court explained that it was carving out an exception for wrongful death injuries where a gap in federal law previously existed, such that "within territorial waters, identical conduct violating federal law (here the furnishing of an unseaworthy vessel) produces liability if the victim is merely injured, but frequently not if he is killed." *Id.* at 211 (internal citation omitted). *Yamaha* does not apply in cases like this where there is no wrongful death claim and the plaintiff is a maritime worker. Moreover, *Yamaha* left intact prior precedent holding that federal maritime law and not state law applied to claims for injury sustained aboard ships in navigable waters. *Id.* (citing *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959)); *see also In re Amtrak Sunset Ltd. Train Crash in Bayou Canot, Ala.*, 121 F.3d 1421, 1429 (11th Cir. 1997) ("*Yamaha* dealt only with wrongful death actions and has no relevance to personal injury actions.").

Fincantieri also argues that Plaintiff should be precluded from seeking punitive damages under Wisconsin law. Since state law is preempted by federal maritime law, the defendants' argument makes sense. But this does not mean punitive damages may not be available. The Supreme Court has surveyed general principles of maritime law to conclude that the "common-law tradition of punitive damages extends to maritime claims." *Atl. Sounding Co. v. Townsend*, 557 U.S. 404, 414 (2009). "Punitive damages are generally available under maritime law where defendant's conduct is 'wanton, willful, or outrageous.'" *Holden v. Capstan Corp.*, No. 17-CV-636-WMC, 2018 WL 5618107, at *15 (W.D. Wis. Oct. 30, 2018) (citing *Atl. Sounding Co.*, 557 U.S. at 414 n.4). Fincantieri distinguishes *Atlantic Sounding Co.*, noting that it dealt with seamen and not longshoremen. Dkt. No. 16 at 7. Yet, courts in this circuit have applied *Atlantic Sounding Co.*'s holding to both seamen and longshoremen seeking punitive damages. *See Holden*, 2018 WL 5618107, at *15 (allowing plaintiffs—two welders and one boilermaker—who worked on a vessel while it was in dry dock to seek punitive damages); *Rekart v. Osage Marine Servs., Inc.*, No. 11-3231, 2013 WL 6500140, at *6 (C.D. Ill. Dec. 11, 2013) (finding a seaman could seek punitive damages while asserting a maintenance and cure claim under general maritime law). Given this authority, the claim for punitive damages to the extent available under federal law may remain in the case.

**C. Motion for Extension of Time to Effect Service**

Finally, the court will address Plaintiff's motion to extend time to effect service or declare that Defendants have waived any defense regarding insufficient service. Dkt. No. 24. Plaintiff states that while he mailed the summons, complaint, and "waiver of service" forms to all of the named Defendants, he only received executed service waivers from Wawa and FBS. *Id.* at 1–2.

Defendants Keystone and Chas Kurz & Co., Inc., filed answers on or about July 29, 2019. Dkt. Nos. 2 and 3. FMS and FBS filed an answer and a motion to dismiss on or about August 30, 2019. Dkt. Nos. 9 and 11. "[I]f a defendant does not object to the manner in which he was served in his answer or his first motion to the court (whichever occurs first), he waives the objection." *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008) (citing Fed. R. Civ. P. 12(h)(1)). As each Defendant has either filed a responsive pleading—which did not object to the manner of service—or executed a waiver of service, the court finds that Defendants have waived any defense regarding the insufficiency of service. Accordingly, Plaintiff's motion is granted.

## CONCLUSION

For the foregoing reasons, the motion to dismiss, Dkt. No. 9, is **GRANTED** with respect to Counts 2 and 5, and **DENIED** with respect to Count 6 to the extent punitive damages are available under federal maritime law. It is further ordered that Plaintiff's motion seeking an order that Defendants have waived any objection to the sufficiency of service in this matter, Dkt. No. 24, is **GRANTED**.

**SO ORDERED** at Green Bay, Wisconsin this 18th day of December, 2019.

s/ William C. Griesbach
William C. Griesbach, U.S. District Judge
United States District Court